UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
Case Number 0:11-cv-60020-WJZ

S & S DIESEL MARINE SERVICES, INC.

    Plaintiff,

v.

M/V "F-TROOP", that certain 1991, 53 foot Viking
Motor Vessel, bearing Hull Identification Number
VKY53135B191, including her engines, tackle,
apparel, and appurtenances, *in rem*; and,
PAUL FLEISCHER, *in personam*,

    Defendants,
_____/

## PLAINTIFF'S POST SUPPLEMENTARY ADMIRALTY RULE E(4)(f) HEARING BRIEF

    Plaintiff, S & S DIESEL MARINE SERVICES, INC., ("S&S DIESEL"), pursuant to direction of the United States Magistrate, hereby files its brief in support of the Court sustaining its arrest of the Defendant, F-TROOP and denying countersecurity to Defendants:

    1.    This action came before the United States Magistrate on May 5, 2011 for post-arrest hearing pursuant to Supplementary Admiralty Rule E(4)(f) and Local Admiralty Rule C(7).

    2.    During the hearing the parties disputed several legal issues including Plaintiff's burden; the relevancy of Defendant's counterclaims and defenses and whether the Court may consider those in determining the propriety of arrest or the amount of any bond; and, whether the Court should allow counter security to Defendants.

    3.    At the close of the hearing the Court granted the parties until May 12, 2011 to file briefs in support of their positions on the issues in dispute at trial.

### TO SUSTAIN ARREST, PLAINTIFF'S BURDEN WAS ONLY TO DEMONSTRATE A PRIMA FACIE CASE FOR MARITIME LIEN AND PLAINTIFF MET THAT BURDEN

    4.    This issue is governed by Supplementary Admiralty Rule E(4)(f);

"(f) *Procedure for Release From Arrest or Attachment.* Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules. This subdivision shall have no application to suits for seamen's wages when process is issued upon a certification of sufficient cause filed pursuant to Title 46, U.S.C. §§ 603 and 604 2 or to actions by the United States for forfeitures for violation of any statute of the United States."

and,

Local Admiralty Rule C(7);

"**(7) Post-arrest Proceedings.** Coincident with the filing of a claim pursuant to Supplemental Rule E(4)(f), and Local Admiralty Rule C(6)(a), the claimant may also file a motion and proposed order directing plaintiff to show cause why the arrest should not be vacated. If the Court grants the order, the Court shall set a date and time for a show cause hearing. Thereafter, if the Court orders the arrest to be vacated, the Court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest.

5. In a post-arrest show cause hearing, Plaintiff's burden is limited to making a prima facie case for its maritime lien. *See*, Advisory Notes to Local Admiralty Rule C(7), *and, Seatrade Group N.V. v. 6,785.5 Tons of Cement*, WL 3878026 (S.D. Tex 2006).

6. "The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond." Salazar v. Atlantic Sun, 881 F.2d 73, 79 (C.A.3 NJ 1989). In fact, "Generally speaking, an exhaustive adversarial hearing is not necessary for resolution of those issues. Thus, in many instances we would expect that an informal proceeding, perhaps in the nature of a conference before the district court, supplemented by affidavits and legal memoranda as directed by the court might be sufficient." *Id*.

7. In resolving the matters at issue in a post-arrest show cause hearing, the Court should not allow the hearing to be turned into a mini trial. *PDS Gaming Corp. v M/V Ocean Jewell of St. Petersburg*, Slip Copy 2007 WL 2988798 (C.A.11 Fla. 2007).

8. In order to meet its burden in a post-arrest show cause hearing, Plaintiff need only establish a prima facie case for a maritime lien. And, "[i]n order to prove a maritime lien under the statute, [Plaintiff] must show (1) that it furnished repairs, supplies or other necessaries, (2) to the

vessel, (3) upon the order of the owner of the vessel or a person authorized by the owner under 46 U.S.C. § 31341.... The term "necessaries" includes "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Courts have interpreted "necessaries" to include "any goods and services 'reasonably needed' in a ship's business for a vessel's continued operation.""

Constructive Hands, Inc. v. Baker, 446 F.Supp.2d 88, 92 (N.D.N.Y. 2006).

9. Section § 31342. Establishing maritime liens provides:

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner –
   (1) has a maritime lien on the vessel;
   (2) may bring a civil action in rem to enforce the lien; and
   (3) is not required to allege or prove in the action that credit was given to the vessel.
(b) This section does not apply to a public vessel.

10. At the hearing, and consistent with its verified complaint, Plaintiff introduced evidence establishing that is has a maritime lien against the F-TROOP for necessaries, including the repair and rebuild of the F-TROOPS two main engines.

11. This evidence was introduced through the testimony of Sebastien Brismeur, owner and president of the Plaintiff. Mr. Brismeur testified that Defendant, Paul Fleisher, was the owner of the F-TROOP and that Mr. Fleisher requested Plaintiff to rebuild the F-TROOP's engines and that Mr. Fleisher entered into and executed two separate written contracts (one for each of the two main engines) for the repairs and that Mr. Fleisher entered into a third written contract for additional necessaries indicating his agreement verbally and through email.

12. Defendant's own verified pleadings admit that Paul Fleisher is the owner of the F-TROOP and that he requested Plaintiff to rebuild the engines. Counsel for Defendants also stated during the hearing that Defendants have refused to pay the balance claimed due for the rebuilds.

13. Plaintiff introduced each of the three contracts into evidence. Plaintiff's Exhibit A is the contract for Plaintiff's rebuild of the F-TROOP's starboard engine; Plaintiff's Exhibit B is the

contract for Plaintiff's rebuild of the F-TROOP's port engine; and, Plaintiff's Exhibit C is the contract for additional necessaries Plaintiff furnished incident to the rebuilds.

14. Mr. Brismeur testified, both in direct and on cross-examination, that Plaintiff performed the rebuilds properly; that the engines were tested under load at the sea trial performed by Scott Marine Power who is an authorized MAN diesel engine repair center; that the engines performed well during the sea trial and did not show any sign that they were improperly rebuilt; and, that oil samples taken by Plaintiff and tested showed normal and no sign of improper rebuild.

15. Sebastien Brismeur testified that Plaintiff substantially completed all of the work under the contracts and that the reason that the work is not 100% complete is that Defendant, Fleisher has refused to pay Plaintiff the balance dues for the necessaries furnished.

16. Sebastien Brismeur testified that the total value of the necessaries that Plaintiff furnished to F-TROOP at the request of owner Fleisher was $189,181.71.

17. This testimony is supported by the copies of the invoices from Plaintiff to Defendants that Plaintiff introduced as evidence as Plaintiff's Exhibit Composite D.

18. Sebastien Brismeur testified that Plaintiff the total balance due and unpaid for the necessaries that Plaintiff furnished to F-TROOP at the request of owner Fleisher is $83,032.94.

19. This testimony is supported by the copies of the invoices from Plaintiff to Defendants that Plaintiff introduced as evidence as Plaintiff's Exhibit Composite D.

20. Sebastien Brismeur testified that Defendants have failed and refused to pay any portion of the $83,032.94. This evidence was confirmed in open Court by Counsel for Defendants.

21. In addition, the Plaintiff's chief mechanic, Sergio Rodriguez, also testified that he himself performed the majority of the rebuilds on the F-TROOP's two main MAN diesel engines on behalf of the Plaintiff and he performed all of the work on the sensitive internal parts of the engines. Mr. Rodriguez testified that he is a mechanic with formal training and education in marine diesel repair and has many years of actual work experience in the repair of marine diesels. Mr. Rodriguez

also testified that he supervised the portion of the repairs that he did not personally perform and that those repairs consisted of the attachment of accessory items to the engines.

22. Mr. Rodriguez testified, both in direct and on cross-examination, that Plaintiff performed the rebuilds properly; that the engines were tested under load at the sea trial performed by Scott Marine Power who is an authorized MAN diesel engine repair center; and that the engines performed well during the sea trial and did not show any sign that they were improperly rebuilt.

23. Accordingly, Plaintiff demonstrated a prima facie case for a maritime lien in its favor and against Defendant, F-TROOP in the fairly stated amount of $83,032.94. Thus, the Court should not vacate Plaintiff's arrest of the F-TROOP.

## DEFENDANT'S FAILED TO SHOW THAT ARREST SHOULD BE VACATED

24. At hearing the Court allowed Defendant ample leeway to introduce testimony or other evidence that it believed would show that the arrest of the F-TROOP arrest should be vacated. Defendants failed to accomplish its goal.

25. In attempt to show that the arrest should be vacated, Defendants suggested that:

i. the repairs failed and that the engines do not work;
ii. that the repairs and other necessaries furnished by Plaintiff were not of value to the F-TROOP;
iii. that there were delays;
iv. that Plaintiff refused to perform a sea trial on the F-TROOP;
v. that Plaintiff's subcontractor damaged parts;
vi. that Plaintiff initially installed incorrect oil pressure nozzles;
vii. that Plaintiff billed for services or materials not furnished;
viii. that the amount Plaintiff charged Defendants for the necessaries was unreasonable; and,
ix. that previous repair work performed by Plaintiff in 2007 on the F-TROOP's starboard engine failed

26. These matters that Defendants introduced at hearing were irrelevant to the proceeding at issue. They were no more than smoke and mirrors designed to distract, mislead, misdirect, and confuse the Court from what was truly relevant and at issue.

27.     None of the issues or matters raised by Defendants defeat the fact that Plaintiff demonstrated a prima facie case for a maritime lien. In order to defeat Plaintiff's prima facie case, Defendants would have had to show that Defendant, Fleisher did not own the F-TROOP; that Defendant, Fleisher did not request the repairs; that Plaintiff performed no repairs or other necessaries; or, that Defendants paid in full for the repairs and other necessaries that Plaintiff furnished at Defendants' request. Defendants failed to accomplish any aspect of that requirement.

28.     Furthermore, Defendants' arguments with respect to value of necessaries do not bear on the proceeding at issue. The proper value of a maritime lien is the amount stated in the contracts giving rise to that lien. *See, Galehead, Inc. v M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. Fla. 1999). Not only that, the TSM Report (page 17) introduced by Defendants and prepared by Defendants own witness states that $145,700.00 is the amount he estimated to repair the starboard engine alone.

29.     Neither do Defendants' insinuations as to equity bear relevance in this proceeding. Defendants' equitable arguments are really only their bare allegations that Plaintiff made mistakes or billed incorrectly and that Plaintiff initially refused to perform a sea trial. However, even Defendant showed that Plaintiff made fraudulent charges for work never performed, this would not defeat Plaintiff's maritime lien. *See, The Kalfarli*, 277 F. 391 (2d Cir. NY 1921).

30.     In addition, Defendants stated positions were not supported by the testimony or evidence introduced. Defendants failed to meet their burden of proof with respect to any of the matters they raised at hearing.

31.     Defendants claimed that the engines were not rebuilt properly and do not work and that for that reason those necessaries were not of value to the F-TROOP. In the first place, there is no authority for the position that evidence that the necessaries provided were not of value to the vessel would stand as the basis to vacate an arrest. Even the attempt to establish such evidence to the point required to deny Plaintiff of its arrest is clearly beyond the scope of the proceeding at issue.

The proper value of a maritime lien is the amount stated in the contracts giving rise to that lien. *Galehead, Inc.*, 183 F.3d 1242, 1247.

Second, the suggestion is incorrect and unsubstantiated. Both of Plaintiff's witnesses testified as to personal knowledge that the engines were properly rebuilt. Both of Plaintiff's witnesses testified that a sea trial was conducted on the F-TROOP by an authorized MAN technician with the owner of the F-TROOP at the helm. This was confirmed by Defendants' own witnesses. Plaintiff's witnesses also testified that both engines ran properly during the sea trial from start to finish and that the only mishap was when the owner, Defendant, Fleisher ran the F-TROOP ground. The fact that the engines ran during the whole sea trial under load and at various revolutions per minute (rpm) was not only testified to by Plaintiff's witnesses buy by witnesses called by Defendant.

On the other hand, the testimony of Defendants' witnesses demonstrated that neither of them were mechanics or had ever been mechanics. In addition, neither of them were experts with respect to MAN diesel engines. They also testified that they did not bring their proper gauges and instruments to the sea trial and that they did not know whether the gauges and instruments that they took their readings from were accurate. They did not testify, nor could they truthfully, that the engines or either one of them failed to meet the factory specified parameters. In fact, Defendants' witnesses failed to even testify as to what the factory specified parameters for a post rebuild sea trial on the F-TROOP's engines were.

32. Defendants' allegations as to delays also do not defeat any element of Plaintiff's prima facie case. They have no bearing as to the elements established as a prima facie case for maritime lien. Furthermore, Plaintiff demonstrated that the delays were in many cases partially the result of Defendant, Fleisher's actions.

In addition to that, Defendants' claims with of delay are disingenuous. Even Defendants' witness testified that an "out of frame" engine rebuild, as was performed in this case, would require as much as three months. Therefore, in the sequence in which Mr. Fleisher requested the rebuilds, a

period of six months could not be called unreasonable. The point to this is that, according to testimony, the starboard engine of the F-TROOP failed in August of 2009 and the TSM Report on the failure as introduced by Defendants was completed on September 12, 2009. Yet, Defendant Fleisher did not request Plaintiff to rebuild anything until January of 2010 and at that point the starboard engine was a dismantled rusty collection of engine parts.

33. The sea trial matters raised by Defendants are also non issues. These issues do not defeat the fact that Plaintiff has established a prima facie case for maritime lien.

They are also irrelevant because there is no requirement that Plaintiff perform a sea trial and Defendants demonstrated no such requirement. The contract does not require a sea trial. The only mention in the contract as to sea trial is for the benefit of Plaintiff should Plaintiff require a sea trial. There is also no law requiring a sea trial. In addition, Sebastien Brismeur testified that it is standard in the industry that payment be made prior to sea trial.

Plaintiff admits that it initially refused to perform a sea trial on the F-TROOP. Plaintiff testified that the reason was that when it announced to Mr. Fleisher that the engines were ready for sea trial and demanded payment, Mr. Fleisher told Plaintiff that he would not pay and that he was going to sue Plaintiff.

34. That a subcontractor damaged parts and that incorrect oil pressure nozzles were initially installed are also non issues. They do not defeat the prima facie case.

Plaintiff's job was to rebuild the engines. That job was performed and it included remedying the damage caused by the subcontractor as well as the incorrect oil nozzles, all at the cost of Plaintiff and not the Defendants.

35. Defendants' suggestion that Plaintiff billed for an engine that was not painted is irrelevant to this proceeding. The suggestion is not probative as to whether Plaintiff has a prima facie case for maritime lien. *Also see, The Kalfarli*, 277 F. 391.

The suggestion is also unfounded and incorrect. Defendants elicited testimony that Plaintiff billed Defendants for the painting of one engine, the starboard engine. They also elicited testimony that one engine was not painted. However, Defendants' witness also testified that one engine had been painted. The invoices admitted as Plaintiff's Composite D show that Plaintiff did bill for the painting of the starboard engine but did not bill for the painting of the port engine.

36.     Also irrelevant to this proceeding are Defendants' counterclaims. These do not have any bearing on the elements Plaintiff demonstrated as to a prima facie case for maritime lien. Collateral damages and damages from prior transactions, even if they were to be proved, would not defeat the elements of Plaintiff's prima facie case.

37.     Because Defendants have failed to defeat any element of Plaintiff's prima facie case for maritime lien, the Court should order that the arrest of the F-TROOP will not be vacated.

## SECURITY REQUIRED TO RELEASE F-TROOP

38.     As Plaintiff has met its burden and shown that the arrest of the F-TROOP should not be vacated, the Court pursuant to Supplemental Admiralty Rule E(5) is to determine the amount of the security required to release F-TROOP.

39.     Supplemental Admiralty Rule E(5) states that the amount of the security that the Court must require shall be fixed to cover the amount of the Plaintiff's claim fairly stated with accrued interest and cost and the security shall be conditioned for the payment of the principal sum plus interest at the amount of 6% per year.

40.     Plaintiff has demonstrated through the testimony of its witnesses and through the contracts and invoices admitted into evidence that the amount of its claim fairly stated is $83,032.94 in principal owed to Plaintiff since September 28, 2010, and, that the cost for the Marshal to arrest was $2,500.00.

41.     Accordingly, Plaintiff submits that the amount of the bond or other security required to release the F-TROOP must be no less than $98,403.04. This amount represents $83,032.94 in

principal, plus $2,906.15 in accrued interest from September 28, 2010, plus $2,500.00 in costs, and interest on the principal amount for 2 years in the amount of $9,963.95.

42. However, "...the amount of damages sought in the complaint should be used as the basis for determining the amount of the bond or deposit unless the claim is blatantly overstated." *20th Century Fox Film Corp. v M.V. Ship Agencies, Inc.*, 992 F.Supp. 1429, 1431 (M.D.Fla. 1997). Accordingly, the Court should add the amounts that Plaintiff has been forced to pay to store the F-TROOP since September 28, 2010 due to Defendants' refusal to pay for the necessaries performed. As set forth in the verified complaint, at over $4,000.00 per month this amount was in excess of $12,444.32 by January of 2011.

43. Also, because the ultimate recovery against the *in rem* Defendant will be limited to the amount of the bond, it is prudent for the Court to err on the high side when determining the amount of the bond. *20th Century Fox Film Corp.*, 992 F.Supp. 1429, 1434.

44. This consideration is especially important in this case due to the fact that it is likely that Defendant, Fleisher is 'judgment proof'. This is suggested by his continual refusal to place any amount of money in trust with respect to this matter and also by suggestion of counsel to Defendants.

45. Further, Defendants have failed to introduce any evidence or authority that would reduce the security by any amount. Defendants have made only unsubstantiated suggestions as that the value of the necessaries furnished by Plaintiff is less than that agreed to between Plaintiff and Defendants. Not only are the suggestions unsubstantiated by evidence, there has been no evidence offered by Defendants as to the monetary value of the necessaries.

46. The Plaintiff has established through evidence and legal authority that the amount of the security to release the F-TROOP should be no less than $98,403.04 and that it should properly be at least $110,847.36 to include the necessary dockage charges for F-TROOP.

### THE COURT SHOULD NOT ORDER ANY AMOUNT OF COUNTER-SECURITY

47. At hearing the Defendants asked the Court to award counter-security.

48. The issue of counter-security in this action is governed by Supplemental Admiralty Rule E(7), which states in pertinent part as follows:

"(7) SECURITY ON COUNTERCLAIM.
(a) When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise."

49. The Court should not order any amount of countersecurity to be posted or otherwise given by Plaintiff because:

i. Defendants did not request counter-security in the motion for show cause hearing or at any time prior to the hearing. Plaintiff should not suffer any prejudice as a result of Defendants' failure to timely request security.

Plaintiff does not seek to release any property from Defendants custody. *See*, *Afram Lines International, Inc. v M/V Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir (Fla.) 1990); "Although the language of Rule E(7) appears mandatory, the propriety of requiring security on a counterclaim and the appropriate amount of any such security are within the discretion of the district court." *Expert Diesel v Yacht "Fishin Fool"*, 627 F.Supp 432, 433 (S.D. Fla 1986). "The district courts' broad discretion derives, in part, from the purpose of Rule E(7), which is to place the parties on equal-footing regarding security, not to inhibit the plaintiff's prosecution of its suit as a maritime lien holder." *Id.* "A district court should move with caution, then, under Rule E(7), and as Professor Moore argues, should be particularly reluctant to compel a party to post counter-security where that party is not attempting to secure the release of any property." *Id. See also, The City of Beaumont v Morgan*, 8 F.2d 599, 601 (4th Cir (Md) 1925).

ii. Defendants could not have brought the counterclaims at issue *in rem*. *Afram*, 905 F.2d 347, 349.

iii. Defendants' counterclaims have not been shown to be anything more than frivolous. *Afram*, 905 F.2d 347, 350. Claims for maintenance of the F-TROOP are frivolous because Defendants established no duty on behalf of Plaintiff to maintain the F-TROOP and because Defendant, Fleisher had and took advantage of full access to the boat at his pleasure. Claims related to the 2007 rebuild

are frivolous because they are based upon the failure of a 20 year old pump that Defendant, Fleisher refused to replace and because Defendant, Fleisher was the final intervening cause of the engine overheat. Claims that the engines were not properly rebuilt are frivolous and at best not even ripe due to the fact that Defendant; Fleisher has not paid for the rebuild; the engines have not failed and Defendants have shown no evidence that they were improperly rebuilt.

iv. The posting of counter-security would inhibit Plaintiff's ability to proceed in this action and diminish its right to the full amount of its maritime lien. *Afram*, 905 F.2d 347, 350; *Bradford Marine, Inc. v M/Y Jani*, 2005 WL 5166293 (S.D. Fla 2006); *Expert Diesel*, 627 F.Supp 432, 433.

v. Defendants' counterclaim with respect to alleged damages from a rebuild performed in 2007 does not arise out of "…the transaction or occurrence that is the subject of the original action…" as is required by Rule E(7), and thus those claims must not be considered.

vi. Defendants' counterclaims with respect to delay do not even state a cause of action under Admiralty Law. *The Conqueror*, 166 U.S. 110 (U.S. S.Ct. 1897); *Matter of Palmer Johnson Savannah, Inc.*, 1 F.Supp2d 1386, 1389 (S.D.Ga 1997); *Oppen v Aetna Insurance Co.*, 485 F.2d 252, 257 (9th Cir 1973); *Fisk v City of New York*, 119 F. 256 (D.C. NY 1902)

vii. Defendants have not presented any evidence as to the value of any counterclaim or any alleged damage. Accordingly, there is no amount that the Court may find as proper counter-security.

viii.

    WHEREFORE, Plaintiff asks this Court to:

a) find good cause for Plaintiff's arrest of the *in rem* Defendant, F-TROOP and to sustain same;

b) require security in at least the amount of $110,847.36 in order for the release of the F-TROOP; and,

c) deny Defendants' dilatory request for counter-security.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _____, the foregoing was electronically filed with the Clerk of Court using the CM/ECF and that the foregoing document is being served this day on Stroup & Martin, P.A., as attorneys for Defendant/CounterPlaintiff, PAUL FLEISHER, 119 Southeast 12th Street, Fort Lauderdale, Florida 33316, jstroup@strouplaw.com, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

WILLIAM STACEY, P.A.

By:_____
William E. Stacey, Jr., Esq.
Florida Bar Number 940460
PO Box 460053
Fort Lauderdale, Florida 33346
Tel (954) 761-9898, Fax (954) 260-4145
Attorneys for the Plaintiff, S & S DIESEL MARINE SERVICES, INC.

cc:   Counsel of Record
      Substitute Custodian